IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **KRISTY D. SUTTERFIELD,** § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:10-CV-1003-BF |
| § | |
| **MICHAEL ASTRUE, Commissioner of the** § | |
| **Social Security Administration,** § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Kristy D. Sutterfield ("Plaintiff" or "Sutterfield") brings this action pursuant to Section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). She seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Title II and Title XVI benefits under 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). After a thorough review of the record, the Commissioner's decision denying Plaintiff's applications is **affirmed in part** and **reversed in part and remanded** for further administrative proceedings consistent with this decision.

**I.    BACKGROUND**[1]

  *A.    Procedural History*

On October 29, 2007, Sutterfield filed applications for Title II and Title XVI benefits, alleging disability beginning on November 22, 2004. (Tr. 156-158, 159-161, 213.) The Commissioner denied her applications initially and upon reconsideration. (Tr. 48-51.) Sutterfield requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 69-70). The ALJ convened the hearing on July 29, 2009. (Tr. 19-45.) The ALJ analyzed Sutterfield's claim pursuant to the

---

[1] The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

familiar five-step sequential evaluation process.[2] At step one, the ALJ determined that Sutterfield had not engaged in substantial gainful activity since November 22, 2004. (Tr. 13, Finding 2.) At step two, the ALJ found that Sutterfield had the following "severe" impairments: Brachial Plexopathy; Sleep Apnea; Chest Wall Pain Syndrome; Lumbar Strain; Depression; and Personality Disorder. (Tr. 13, Finding 3.) At step three, the ALJ determined Sutterfield did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 14, Finding 4.)

Next, the ALJ found Sutterfield's subjective complaints were not credible to the extent alleged. (Tr. 16.) After careful consideration of the evidence as a whole, the ALJ found that Sutterfield had the residual functional capacity ("RFC") to:

> lift and carry 10 pounds, sit 6 hours and stand 6 hours per day. She must shift positions every 30 to 60 minutes. She should never climb ladders/ropes and only occasionally balance, stoop, kneel, crouch, or crawl. She should only reach overhead or push/pull with the left upper extremity occasionally. She can understand, remember, and follow simple and detailed instructions and complete repetitive tasks.

(Tr. 15, Finding 5.) At step four, the ALJ determined Sutterfield was unable to perform any past relevant work. (Tr. 16, Finding 6.)

At step five, the ALJ determined, based on vocational expert ("VE") testimony, that Sutterfield could perform other work in the national economy consisting of an order clerk, optical goods assembler, and cutter/paster. (Tr. 44.) Accordingly, the ALJ found that Sutterfield was capable of performing other work existing in significant numbers in the national economy. (Tr. 17, Finding 10.) Therefore, the ALJ concluded that Sutterfield was not disabled within the meaning of

---

[2] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

the Act at any time through the date of his decision. (Tr. 18, Finding 11.) When the Appeals Council declined Sutterfield's request for review on March 16, 2010 (Tr. 1-3), the ALJ's decision became the final decision of the Commissioner, from which Sutterfield seeks judicial review pursuant to 42 U.S.C. § 405(g).

### B. *Factual History*

<u>Plaintiff's Age, Education, and Work Experience</u>

Plaintiff was born on June 16, 1964, and was 45 years old at the time of the ALJ's September 25, 2009 decision. (Tr. 18, 156.) She has some college and trade school education and has past relevant work experience as a copy repair technician, fire alarm technician, and pet groomer. (Tr. 28, 231.)

## II. ANALYSIS

### A. *Standard of Review*

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

      2.      An individual who does not have a "severe impairment" will not be found to be disabled.

      3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

      4.      If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

      5.      If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

      The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but

rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### B. *Issues and Analysis*

**Whether the ALJ's Mental RFC Finding is Supported by Substantial Evidence and Whether it Contradicts Other Findings by the ALJ**

The ALJ found that Plaintiff suffers from severe mental impairments, including depression and a personality disorder. (Tr. 13.) The ALJ rated Plaintiff's mental impairment in the activities of daily living, social functioning, concentration, persistence and pace, and considered whether Plaintiff's mental impairments have ever resulted in episodes of decompensation. 20 C.F.R. §§ 404.1520a and §416.920a. The ALJ found that Plaintiff's mental impairments result in mild limitations in activities of daily living, moderate limitations in concentration, persistence and pace and social functioning. (Tr. 15.) He found that her mental impairments had not resulted in any episode of decompensation. (*Id*.)

Plaintiff claims that the ALJ's RFC determination failed to accommodate in any way for Plaintiff's moderate limitation in social functioning. Plaintiff argues this was error since a claimant's RFC finding must include all limitations supported by the record, even those that are not severe. 20 C.F.R. §§ 404.1545(e) and 416.945(e).

Plaintiff contends the State agency physician opined that Plaintiff's mental impairments result in moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 1148.) The ALJ is required to consider a State agency physician's findings of fact about the nature and severity of a claimant's impairments as an opinion of a non-examining physician. SSR 96-6p; *See* 20 C.F.R. §§ 404.1512(b)(6) and

404.1527(f), 416.912(b)(6), 416.927(f). Plaintiff contends the ALJ's decision does not indicate any consideration of the State agency physician's opinion regarding the limiting effects of Plaintiff's mental impairment, nor provide a reason for rejecting the limitations in social functioning that are indicated in the State physician's opinion and consistent with the ALJ's finding of a moderate limitation in social functioning.

The Commissioner responds that the ALJ properly evaluated the severity of Plaintiff's mental impairments and their limiting effect. The Commissioner notes that Plaintiff relies upon state agency physician ("SAMC") Dr. Robert White's summary conclusions. These are in the first section in the form of a checklist which the SAMC uses when he reviews the evidence. Dr. White's functional assessment of Plaintiff is in the third section.[3] (Tr. 1147-48.) In the checklist, Dr. White indicated moderate limitations in (1) the ability to accept instructions and respond appropriately to criticism from supervisors, and (2) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id*.) Dr. White made the following mental functional capacity assessment: "Claimant can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting." (*Id*. 1149.) The ALJ's mental RFC findings reflect that Plaintiff can understand, remember and follow simple and detailed instructions and complete repetitive tasks. (*Id*. 15.) The Court finds that the ALJ's mental RFC finding adequately accounted for Dr. White's mental functional capacity assessment.

---

[3] The form Dr. White used explains that the checklist is a section for recording summary conclusions from the evidence in the file; whereas, the doctor's functional assessment is recorded in Section III which is entitled "Functional Capacity Assessment." (Compare Section I., Tr. at 1147-48, with Section III, Tr. at 1149).

Additionally, neither the SAMC nor any other doctor has the responsibility for assessing a claimant's RFC. The determination of a claimant's RFC is reserved for the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). The ALJ must consider statements by a physician about what a claimant can still do despite her impairments because they are an important consideration in assessing a claimant's RFC; however, such statements are not determinative. *See* 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945. "Opinions on some issues," such as whether a claimant is disabled and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(e). The final responsibility for deciding a claimants RFC, or whether a claimant is disabled under the Act, is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(2). Accordingly, the ALJ's RFC finding did not need to mirror the findings or opinion of the state agency psychologist.

The Commissioner argues that Sutterfield did not begin treatment for her mental condition until two weeks before the July 29, 2009, hearing. (Tr. 21.) The report of Metrocare Services Pathway Clinic, dated July 24, 2009, stated that Sutterfield was currently receiving treatment for a diagnosis of "Major Depressive Disorder, Recurrent, Severe, with Psychotic features." (Tr. 1282). Other medical records mention depression and other mental problems, but no treatment regime. The ALJ found that Plaintiff's depression and personality disorder are severe. The ALJ's mental RFC is supported by substantial evidence and is consistent with his own findings at Steps 2 and 3 that Plaintiff has moderate difficulties in social functioning. The Court finds that the record does not support Plaintiff's argument that the ALJ's mental RFC finding was not supported by substantial

evidence and was contradicted other findings by the ALJ.  Accordingly, the ALJ did not err in excluding any limitation in Sutterfield's interaction with supervisors and coworkers from his mental RFC finding.  Plaintiff was not prejudiced, and no reversible error occurred.

When, as here, a claimant's RFC is limited by non-exertional impairments, the ALJ can meet his burden of proof at step five of the sequential evaluation only by obtaining VE testimony that responds to a hypothetical question that reasonably incorporates all of a claimant's disabilities.  *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).  Plaintiff contends that the ALJ's hypothetical question to the VE failed to accommodate for Plaintiff's moderate limitation in social functioning.  The ALJ asked the VE several hypothetical questions but included the same mental limitations in each one.  The hypotheticals asked if there was work someone of Plaintiff's age and education who had certain physical limitations (which are not in question here) and who "had the ability to understand, remember, and follow simple and detailed instructions and was able to attend to tasks could perform."  The VE identified several jobs that exist in significant numbers in the local and national economies.

The Court has found that the ALJ did not err in excluding any limitation in Sutterfield's interaction with supervisors and co-workers from his mental RFC finding.  Sutterfield has failed to show that the limitations the ALJ included in his RFC finding and hypothetical question to the VE did not properly accommodate her moderate limitations in social functioning. Additionally, Sutterfield did not present any other evidence that would warrant additional limitations. Furthermore, Sutterfield's attorney had the opportunity to object to the VE's responses and cross examine the VE regarding alleged deficiencies in his responses. (Tr. 44.)  Sutterfield's attorney did not ask the VE any questions on cross-examination and has thus waived her right to object. (*Id.*)

*See Carey v, Apfel,* 230 F.3d 131, 146-147 (5th Cir. 2000) (a claimant is not permitted to scan the record for implied or unexplained conflicts in the specific testimony of an expert witness, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development at the administrative hearing). The ALJ's hypothetical question included all limitations that the ALJ found were supported by the record. (Tr. 44.) Accordingly, the VE's testimony provided substantial evidence of a significant number of jobs that Sutterfield could perform. *Bowling,* 36 F.3d at 436. The Commissioner met his burden at step five to show that other work existed that Sutterfield could perform. The burden shifted to Sutterfield to prove that she could not perform the alternate work. *See Carey*, 230 F.3d at 135 (explaining that if the Commissioner meets his step five burden, the claimant must then prove she in fact cannot perform the alternate work). Sutterfield failed to show that she cannot perform the other work.

The Court finds that the ALJ's mental RFC finding is supported by substantial evidence and his subsequent finding that Plaintiff can perform other work existing in significant numbers is supported by substantial evidence. No prejudicial error occurred in this regard. Accordingly, remand is not required.

### **Whether the ALJ Erred in Failing to Make a Finding Regarding the Severity and Limiting Effects of Plaintiff's Left Hand Impairment**

An ALJ is required to consider the severity and limiting effects of all the impairments that Plaintiff alleges or about which he receives evidence. 20 C.F.R. §§404.1512(a) and 416.912(a) ("We will consider only impairment(s) you say you have or about which we receive evidence"). In March 2005, medical evidence revealed Plaintiff had a restricted range of motion in her left shoulder and reportedly was unable to raise her elbow above her shoulder. (Tr. 774.) Examination revealed

Plaintiff had diminished hand grip of the left hand. (*Id.*) In November 2005, Plaintiff was examined due to complaints of left thoracic back pain and left hand paresis. (Tr. 1081.)

In January 2006, medical records indicated that Plaintiff had weakness and numbness in her left hand, and dropped things with her left hand. (Tr. 489, 547.) Dr. Karen M. Kirk assessed Plaintiff with suspected thoracic nerve injury on the left, and left upper extremity neuropathy. (Tr. 490.) Also in January 2006, Dr. Steven Lane Casey noted that Plaintiff's thoracic and lumbar spine flexion and extension, and right and left side bending were decreased. (Tr. 513.) Upon examination, Plaintiff could not fully lift her left arm. (Tr. 513.)

The following month, in February 2006, Plaintiff continued to complain of paresthesias radiating into her left arm and hand, with pain that radiated into the left axilla area and the posterior aspect of the left upper arm. (Tr. 497.) Plaintiff described her pain as radiating into the left forearm, hand, and fingers, with tingling and numbness in the fingers of the left hand, and weakness in the left arm and hand, causing her to occasionally drop objects. (*Id.*) An EMG performed on February 13, 2006, was "abnormal," and the differential diagnosis provided included a chronic left C7 radiculopathy versus left brachial plexopathy, chronic. (Tr. 553.)

An examination, also performed in February 2006, indicated that her left arm ached all the way down and that she experienced weakness and numbness in the left hand. On exam, motor of the left hand was about 3/5, with decreased sensation on the left lateral aspect of the thigh, and 2/4 deep tendon reflexes globally in the lower extremities. (Tr. 703.) The doctor suspected thoracic nerve injury on the left, facet disease of the left lumbar, and left upper extremity neuropathy. (*Id.*)

A cervical spine MRI performed in March 2006 revealed, among other findings, a C4-C5 central disk protrusion that abuts the ventral aspect of the thecal sac and results in borderline central

canal stenosis, as well as a central right paracentral disk protrusion and a mild right neural foraminal canal stenosis secondary to facet arthropathy. (Tr. 727.)

At her administrative hearing, Plaintiff testified regarding her hand pain and weakness, explaining that she could not lift a gallon of milk without pain. (Tr. 36.) Plaintiff also explained that her hand impairment affected her ability to perform even simple day-to-day tasks. (Tr. 39.) For example, when she tried to brush her teeth, she dropped her toothbrush, and her hand just stopped working. (*Id.*)

The ALJ called a medical expert ("ME"), Dr. Gerald Moore to testify at the administrative hearing. The ME explained that Plaintiff's left arm pain is best described as brachial plexopathy, and the ALJ found Plaintiff's bracial plexopathy to be a severe impairment. (Tr. 13, 22-23.) The ME explained that the brachial plexus is the group of nerves that come together from the spinal cord, mix together, and then go from there into the median, ulna and radial nerve in the hand and forearm. (Tr. 23.) He further explained that the abnormal findings on Plaintiff's EMG were "consistent with irritation in the brachial plexus," and stated that pain in the brachial plexopathy can involve all the fingers. (Tr. 23.) However, in giving his opinion with respect to the effects of this condition on Plaintiff's RFC, the ME stated that he did not see any interference with gross or fine manipulation. (Tr. 25.) Plaintiff argues that this is incorrect because of Plaintiff's testimony at the hearing that she cannot even hold a toothbrush without dropping it, and because medical records also support Plaintiff's complaints of an inability to handle objects without dropping them. (Tr. 39, 497, 732, 1106.) Plaintiff claims that the ME incorrectly assumed that Plaintiff's brachial plexopathy, or arm and hand impairment, does not affect her ability to perform gross or fine manipulations, even though he admits that the condition can involve all fingers. (Tr. 23, 25.) Plaintiff contends that the ALJ's

11

RFC determination duplicates the medical expert's RFC opinion. She urges that because the medical expert's RFC opinion did not properly consider all of the evidence, including evidence of difficulty holding or grasping objects, the ALJ's RFC finding is not supported by substantial evidence. (Tr. 15, 25.)

According to Plaintiff, if the ALJ had recognized that Plaintiff's impairments limit her ability to hold and grasp objects, he could not have found Plaintiff capable of performing work in the national economy as an order clerk, optical goods assembler, or cutter/paster. (Tr. 17.) Plaintiff notes that the *Dictionary of Occupational Titles* ("DOT") identifies the job of order clerk (Listing 209.567-014) and optical goods assembler (Listing 713.687-018), as requiring both frequent handling and fingering.[4] Plaintiff states that similarly, the job of "cutter/paster" (Listing 249.587-014) requires the ability to handle frequently and finger occasionally. Plaintiff concludes that if the ALJ properly had assessed Plaintiff's RFC as including a limited ability to perform gross or fine manipulations – a finding Plaintiff contends is supported by Plaintiff, the ME's testimony, and the medical evidence – the ALJ could not have found Plaintiff capable of performing the identified jobs.

Plaintiff emphasizes that the burden of proving that a claimant retains the ability to perform other work existing in significant numbers in the national economy lies with the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 271-2 (5th Cir. 2002). Plaintiff concludes that the Commissioner has failed to meet his burden of proof and, as a result, remand is required.

---

[4] "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. Social Security Ruling ("SSR") 85-15, 1985 WL 56856 *7 (1985). Fingering is required in "most unskilled sedentary jobs." *Id.* "Handling," which means seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, is an activity required in almost all jobs. *Id.*

Defendant discounts Plaintiff's challenge to the ME's analysis by noting that the medical expert found postural limitations resulting from Plaintiff's brachial plexopathy, recommending that the ALJ limit to the occasional level Plaintiff's overhead use, lifting, pushing and pulling with the left arm. The ALJ adopted the ME's RFC findings verbatim, rather than making his own determination based upon the medical records. (Compare Tr. 15 to Tr. 25.) Defendant makes the *post hoc* assumption that the ME considered Plaintiff's evidence of difficulty holding or grasping objects – even though he did not mention it – because the evidence was in the record. (Tr. 497, 732, 1106.) However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council," rather than with *post hoc* rationalizations. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

The Court has reviewed the ME's testimony that the ALJ relied upon to discount any handling and fingering restrictions. The ME's statements are inconsistent, ambiguous, and not based upon substantial evidence. The ME states:

> The EMG study is reported as showing an abnormality which is consistent with irritation in the brachial plexus, and they feel –some of the doctors feel that is the problem there for her, since the MRI scan is normal. This is coming from irritation, probably injury to the, to that nerve. The only problem I have with that Judge is that the neurological examinations are consistently *normal*. [Emphasis supplied]. Now, the, the EMG is clearly a very objective test, and it's something that I have never learned how to read. They, they're rather difficult. Neurologists and the physical medicine people learn to read those, and I have to take their word for it that it's *abnormal*. [Emphasis supplied]. The treating doctors have taken it at face value. It's the only thing I can find in the file that supports that, however. The distribution of pain is not well defined in the, in the file. But when it's in the brachial plexus, it certainly can involve all branches, which would involve all the –could involve all the fingers. But she has consistently had pain in that area. I don't see where the reflexes have been altered. I don't see where there is any atrophy. But pain has been the major issue.

(Tr. 23.)

The ALJ erred by adopting verbatim the ME's opinion based upon the ME's confusing testimony. For example, the ME explained that the EMG is clearly an objective test, but Plaintiff's handling and fingering are normal, despite the abnormal EMG performed on February 13, 2006. (Tr. 23, 553.) The ME states that [the brachial plexis] *would* involve all the [fingers] and then states it *could* involve all the fingers. [Emphasis supplied]. He notes Plaintiff's pain in that area but fails to note that in February her complaints to her treating physician, such as February 13, 2006:

> [The patient] also describes intermittent numbness and tingling radiating to the left forearm, hand and fingers. The patient states there is no pattern and that it involves all the fingers of the left hand and arm weakness, occasionally dropping objects and dropping drinks.

(Tr. 497.) He does not mention Plaintiff's treating physician's finding of "diminished hand grip of the left hand" in March 2005 (*Id.* 774), Plaintiff's "paresis of the left hand" in November 2005, Plaintiff's complaint of "paresthesias radiating into her left arm and hand" in February 2006 or the examination which reveal weakness and numbness in the left hand. (Tr. 703.) Motor of the left hand on that date was about 3/5. (*Id.*) The doctor suspected thoracic nerve injury on the left, facet disease of the left lumbar, and left upper extremity neuropathy. (*Id.*)

In his decision, the ALJ fails to note any of these examinations by treating physicians. The ALJ picked and chose medical evidence favorable to his finding, mentioning only that, "Dr. Karen M. Kirk evaluated the claimant on March 25, 2008. She had chronic left thoracic pain and left brachial plexopathy." The ME and thus the ALJ did not consider all of the medical evidence from the treating physicians, including evidence of Plaintiff's difficulty holding or grasping objects. Both the ME and the ALJ assumed that Plaintiff's brachial plexopathy, or arm and hand impairment, does not affect her ability to perform gross or fine manipulations, without considering conflicting objective medical evidence to the contrary. Substantial evidence does not support the ALJ's RFC.

14

The Court finds that the Commissioner erred by failing to make a finding regarding the severity and limiting effects of Plaintiff's left hand impairment. The VE stated Plaintiff was capable of performing other work, such as order clerk, optical goods assembler, and cutter/paster. All three of these jobs require the ability to handle frequently.[5] (*Dictionary of Occupational Titles* ("DOT") Listings 209.567-014, 713.687-018, and 249.587-014.) Additionally, the jobs of order clerk and optical goods assembler also require frequent fingering, and the job of cutter/paster requires occasional fingering. (*Id.*) Plaintiff clearly was prejudiced by this legal error.

## **Conclusion**

"Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). A reasonable possibility exists that if the ALJ had considered all of the evidence, he would have included a hand and fingering limitation in his RFC assessment, and that this would have changed his determination.

---

[5] "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. Social Security Ruling ("SSR") 85-15, 1985 WL 56856 *7 (1985). Fingering is required in "most unskilled sedentary jobs." *Id.* "Handling," which means seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands, is an activity required in almost all jobs. *Id.*

Accordingly, this case is reversed and remanded for further administrative proceedings consistent with this opinion.

    SO ORDERED, September 29, 2011.

                                      **PAUL D. STICKNEY**
                                      **UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).